**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSE CRUZ,<br><br>Plaintiff,<br><br>v.<br><br>SUPERINTENDENT THOMAS MCGINLEY, *et al.*,<br><br>Defendants. | No. 4:26-CV-02376<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 30, 2026**

Plaintiff Jose Cruz lodged this *pro se* Section 1983[1] lawsuit in August 2026, alleging constitutional violations at the State Correctional Institution in Coal Township, Pennsylvania (SCI Coal Township). The Court will dismiss Cruz's Section 1983 claims under 28 U.S.C. § 1915A(b)(1) because he fails to state a claim upon which relief may be granted.

## I. BACKGROUND

At all times relevant, Cruz was incarcerated at SCI Coal Township.[2] He is currently imprisoned at SCI Greene.[3] He alleges that on August 12, 2024, he was

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] *See generally* Doc. 1.

[3] *See id.* at p. 8.

placed in the Restricted Housing Unit (RHU) at SCI Coal Township while under investigation for a disciplinary infraction.[4] Cruz alleges that he had a broken jaw at this time, but he does not explain how his jaw was broken.[5] He asserts that he submitted a sick call and was seen the same day by the "Dentist," who took X-rays of his jaw and diagnosed it as broken.[6]

Cruz alleges that he was placed on a liquid diet by the dentist but was not given any other medical care or taken to an outside hospital for eleven days.[7] He recounts that nine days after he was transferred to the RHU—on August 21, 2024—he spoke with Superintendent Thomas McGinley and Deputy Karen Merritt-Scully, who were doing rounds.[8] Cruz alleges that he told them that he had been in the RHU for "ten days" with a broken jaw and was suffering from extreme pain and difficulty eating.[9] The next day, he was transferred to an outside hospital for jaw surgery, remaining in the hospital until August 24, 2024.[10]

Cruz next claims that on August 27, 2024, Intelligence Captain Scicchitano and Intelligence Lieutenant Cohoon charged him with a misconduct (F107266), presumably for whatever incident resulted in Cruz's broken jaw.[11] Cruz contends

---

4 *See id.* ¶¶ 20, 21.
5 *See id.* ¶ 20.
6 *Id.*
7 *Id.*
8 *Id.*
9 *Id.*
10 *Id.*
11 *Id.* ¶ 21.

that the misconduct was issued 16 days after he was placed under investigation on August 12, 2024, thereby violating Department of Corrections policy DC-ADM 802, which purportedly provides a 15-day limit for issuance of a misconduct after an investigation is commenced, unless the investigation is formally extended.[12]

Cruz further contends that Grievance Coordinator Amy Wheary interfered with the administrative grievance process and thereby also interfered with "this Civil Action" because she rejected his grievances multiple times.[13] He additionally alleges that unspecified defendants "conspired" against him to keep him from exhausting administrative remedies so he could not file the instant Section 1983 lawsuit.[14]

Finally, Cruz alleges that unspecified "defendants" retaliated against him for filing a grievance (number 1106814) by transferring him "far away" from his family.[15] According to Cruz, at some point in time, Deputy Victor Mirarchi stated, "If you promise you won't sue us, we will let you back out to population[;] if not[,] you are getting transfer [sic]."[16] Cruz does not assert when he filed the at-issue grievance or when he was transferred out of SCI Coal Township.

---

12 *Id.*
13 *Id.* ¶ 22.
14 *Id.*
15 *Id.* ¶ 23.
16 *Id.*

Cruz sues nine defendants: Superintendent McGinley, Deputy Mirarchi, Deputy Merritt-Scully, "SCI Coal Township Medical Department Supervisor (2024) August," "SCI Coal Township Doctor (August 2024)," "SCI Coal Township Dentist (August 2024)," Grievance Coordinator Wheary, Captain Scicchitano, and Lieutenant Cohoon. He appears to raise Section 1983 claims under the First, Eighth, and Fourteenth Amendments.[17] He also claims to assert state-law torts of medical malpractice and negligence.[18] Cruz seeks compensatory and punitive damages, as well as costs.[19] However, he fails to state a Section 1983 claim upon which relief may be granted.

## II. STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[20] One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]"[21] This language closely tracks Federal Rule

---

[17] *See id.* ¶¶ 10, 25. Cruz also cites the Fifth Amendment. *See id.* However, because he is suing only state government officials, he has provided no basis for a claim under the Fifth Amendment, which pertains exclusively to action by the federal government. *See B & G Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011); *Bieregu v. Reno*, 59 F.3d 1445, 1454 (3d Cir. 1995) (noting that due process claim against federal officials arises under Fifth Amendment), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983) (per curiam) (explaining that Fifth Amendment applies only to "federal governmental action").

[18] *See* Doc. 1 ¶ 11.

[19] *See id.* ¶ 15.

[20] *See* 28 U.S.C. § 1915A(a).

[21] *Id.* § 1915A(b)(1).

of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[22]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[23] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[24] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[25]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[26] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[27] Second, the court should distinguish well-

---

22 *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

23 *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

24 *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

25 *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

26 *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

27 *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).

pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[28] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[29] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[30]

Because Cruz proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[31] This is particularly true when the *pro se* litigant, like Cruz, is incarcerated.[32]

## III. DISCUSSION

As best as the Court can discern, Cruz is asserting the following four Section 1983 claims: (1) Eighth Amendment deliberate indifference to serious medical needs; (2) Fourteenth Amendment procedural due process; (3) First and Fourteenth Amendment denial of access to courts; and (4) First Amendment retaliation. None of Cruz's claims survives Section 1915A(b)(1) scrutiny. The Court will explain Cruz's numerous pleading deficiencies in turn.

---

28 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
29 *Id.* (quoting *Iqbal*, 556 U.S. at 679).
30 *Iqbal*, 556 U.S. at 681.
31 *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations omitted).
32 *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### A. Personal Involvement

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*."[33] Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct."[34] Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity.[35] Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability.[36]

As noted above, Cruz purports to sue nine Defendants. However, he does not plausibly allege personal involvement for "SCI Coal Township Medical Department Supervisor (2024) August" or "SCI Coal Township Doctor (August 2024)." Cruz does not assert what these Defendants did or did not do that

---

[33] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (affirming same principle in *Bivens* context).

[34] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[35] *Id.* (quoting *Rode*, 845 F.2d at 1207).

[36] *See id.* (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

allegedly violated his constitutional rights. In fact, these Defendants appear only in the caption and defendant-identification section of the complaint.

To plausibly plead a Section 1983 claim, however, Cruz must specify *each* Defendant's personal involvement in the alleged constitutional misconduct. He does not do so for the unidentified medical department supervisor or the unidentified doctor. So the Section 1983 claims against these two Defendants must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### B. Eighth Amendment Medical Indifference Claim

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[37] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly allege that "(1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff."[38] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[39]

---

[37] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[38] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citation omitted); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[39] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[40] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[41] Claims sounding in mere medical negligence will not suffice.[42]

The Court assumes that Cruz has alleged a serious medical need with respect to his broken jaw. Nevertheless, any Eighth Amendment medical indifference claim fails as to the other elements.

Cruz appears to contend that his Eighth Amendment rights were violated when he was kept in the RHU for eleven days without being sent to a hospital for treatment for his broken jaw.[43] His claim fails, however, because he does not plausibly allege deliberate indifference by any named Defendant, nor does he plausibly allege that any Defendant's deliberate indifference caused him harm.

Cruz states that he spoke with Superintendent McGinley and Deputy Merritt-Scully on August 21, 2024, about his broken jaw and need for medical

---

40 *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).

41 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

42 *Rouse*, 182 F.3d at 197.

43 *See* Doc. 1 ¶ 20 ("There should [not] be any excuse of why[] it took them eleven days to take me to the hospital after it was determined that I had a broken jaw.").

care. However, he then admits that he was transferred to an outside hospital for surgery the very next day. These allegations do not reflect deliberate indifference to serious medical needs by Superintendent McGinley or Deputy Merritt-Scully; in fact, they show the opposite.

Cruz also asserts that he saw an unidentified dentist on August 12, 2024, who took x-rays, diagnosed him with a broken jaw, and prescribed a liquid diet. These threadbare allegations about treatment on a single day do not establish that the dentist was *deliberately indifferent* to Cruz's serious medical needs. At most, Cruz appears to be alleging that he should have been provided with a different course of treatment than that which the dentist prescribed (*i.e.*, the dentist should have immediately sought to transfer him to an outside hospital rather than placing him on a liquid diet). But such allegations sound only in medical negligence, not constitutional misconduct.[44]

In sum, Cruz has not plausibly alleged that any Defendant refused to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denied prescribed medical treatment, or denied reasonable

---

44 *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").

requests for treatment resulting in suffering or risk of injury. Nor has he plausibly alleged that any particular Defendant's deliberate indifference caused him harm.

Nevertheless, it is possible that Cruz could amend his pleading to include additional facts regarding his allegedly deficient medical treatment at SCI Coal Township in August 2024. The Court will therefore grant Cruz leave to amend his Eighth Amendment medical indifference claim.

### C. Fourteenth Amendment Procedural Due Process Claim

Cruz contends that his procedural due process rights were violated when he was charged with a misconduct outside of the applicable time limits provided by DOC policy. These allegations do not implicate a constitutional violation.

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"[45] If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end.[46]

Cruz's due process claim fails for at least two reasons. First, he has not identified the deprivation of an interest protected by the Due Process Clause. He

---

[45] *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

[46] *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hill*, 455 F.3d at 234-35.

claims that he was issued a misconduct beyond the 15-day time limit provided by DC-ADM 802. Yet he does not assert that his life, liberty, or property interests were adversely affected by this prison disciplinary proceeding. And even if he was found guilty of the charged offense and subjected to disciplinary segregation for a period of time, it is well settled that such run-of-the-mill disciplinary segregation is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment.[47]

Second, Cruz's math is incorrect. He alleges that he was placed in the RHU for a disciplinary investigation on August 12, 2024, and that the misconduct was charged on August 27, 2024. This time period, however, is 15 days. Therefore, assuming Cruz's allegations regarding DC-ADM 802 are true, the misconduct was timely issued on the fifteenth day following his placement in administrative segregation (not on the sixteenth day as he claims), comporting with DOC policy.

Cruz fails to plausibly allege a procedural due process violation. Consequently, this claim will be dismissed pursuant to Section 1915A(b)(1) as well.

---

[47] *See Sandin v. Conner*, 515 U.S. 472, 484, 486 (1995); *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months' disciplinary segregation is not an atypical and significant hardship); *Torres v. Fauver*, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); *Griffin v. Vaughn*, 112 F.3d 703, 705-07 (3d Cir. 1997) (fifteen months); *Dunbar v. Barone*, 487 F. App'x 721, 725 (540 days).

### D. First and Fourteenth Amendment Access to Courts

Under the First and Fourteenth Amendments to the United States Constitution, "prisoners retain a right of access to the courts."[48] Inmates, however, may only proceed on access-to-courts claims in two situations: "challenges (direct or collateral) to their sentences and conditions of confinement."[49] To adequately plead an access-to-courts claim that is backward-looking in nature,[50] the prisoner must allege "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit."[51] The underlying claim must be described well enough to demonstrate that it is "more than hope," and the complaint must set out the "lost remedy."[52]

Simple recitation of the elements of an access-to-courts claim reveals that Cruz's complaint fails to state such a claim. Cruz appears to contend that Grievance Coordinator Wheary (and other unidentified prison officials) interfered with his grievance and appeals to stop him from filing "this Civil Action."[53] Yet

---

48 *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).

49 *Id.* (citing *Lewis*, 518 U.S. at 354-55).

50 There is also a category of access-to-courts claims that is forward-looking, in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

51 *Monroe*, 536 F.3d at 205 (quoting *Christopher*, 536 U.S. at 415).

52 *See Christopher*, 536 U.S. at 416-17.

53 Doc. 1 ¶ 22.

Cruz obviously was not stopped from filing a Section 1983 lawsuit, as the instant case plainly shows. Thus, Cruz has not alleged that he suffered a cognizable injury, *i.e.*, that he lost the chance to pursue a nonfrivolous post-conviction challenge or conditions-of-confinement claim.

To the extent Cruz maintains that prison officials intentionally stymied his efforts at administrative exhaustion, that allegation in itself does not show that Cruz suffered a cognizable injury. To avoid dismissal of his Section 1983 lawsuit for failure to exhaust administrative remedies—if indeed he failed to properly exhaust those remedies—Cruz need only establish that prison officials made administrative remedies unavailable to him.[54]

In sum, Cruz has not plausibly alleged that he lost the opportunity to pursue a nonfrivolous conditions-of-confinement claim. Therefore, he has not stated a First and Fourteenth Amendment access-to-courts claim and dismissal of that claim is required.

### E. First Amendment Retaliation

In his final Section 1983 claim, Cruz alleges that he was subjected to retaliation for filing a prison grievance by being transferred to a different prison far away from his family. This retaliation claim, like his other Section 1983 claims, is insufficiently pled.

---

[54] *See Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[55] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[56]

There are a variety of ways to establish causation for a First Amendment retaliation claim. One method is to show "unusually suggestive" timing between the protected conduct and the adverse action.[57] When a plaintiff relies solely on circumstantial evidence of temporal proximity, the time between the protected conduct and the adverse action is often measured in days rather than weeks or months.[58] However, there is no "bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant."[59] Another approach is to demonstrate "a pattern of antagonism

---

55 *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

56 *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

57 *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

58 *See Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018).

59 *Id.*

coupled with timing."[60] Finally, causation can be inferred "from the evidence gleaned from the record as a whole."[61] Logically, a plaintiff asserting retaliation "will have to show . . . that the decision maker had knowledge of the protected activity[.]"[62]

Cruz adequately alleges the first two elements of a retaliation claim. That is, he asserts that he engaged in constitutionally protected conduct (filing a prison grievance),[63] and that he suffered an adverse action by prison officials (being transferred to a different prison farther away from his family).[64] His complaint, however, fails to plausibly allege causation.

Cruz does not assert when he filed the at-issue grievance (1106814), nor does he state when he was transferred. He therefore has not alleged causation through unusually suggestive timing. Additionally, he does not allege who took the adverse action against him (*i.e.*, who ordered the transfer), so it follows that he has not plausibly alleged that the adverse-action decisionmaker had knowledge of his protected conduct.

---

60 *DeFlaminis*, 480 F.3d at 267.

61 *Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

62 *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citation omitted).

63 *See Mitchell*, 318 F.3d at 530.

64 *See, e.g.*, *Rauser*, 241 F.3d at 333 (noting that transfer to a distant prison where family could not visit could implicate adverse action); *Williams v. Wetzel*, No. 1:17-CV-79, 2020 WL 583983, at *8 (M.D. Pa. Feb. 6, 2020) (finding that prison transfer was adverse action where it "punitively detach[ed] Plaintiff from his loved ones and/or visitation" and affected his parole recommendation).

Although Cruz claims that Deputy Mirarchi threatened him by saying, "If you promise you won't sue us, we will let you back out to population[;] if not[,] you are getting transfer [sic],"[65] this statement does not involve Cruz's grievance and thus does not show causation. Cruz was transferred *before* he filed the instant lawsuit (*i.e.*, before he "sued" prison officials). Obviously, there can be no "retaliation" that predates the protected First Amendment conduct. Retaliation—by definition—can only occur after and because of the plaintiff's protected conduct.

Cruz has not plausibly alleged causation, the third element of a retaliation claim. This claim, therefore, must be dismissed pursuant to Section 1915A(b)(1). Leave to amend will be granted because it is possible that Cruz could amend his complaint to plausibly allege a retaliatory transfer.

### F. State-Law Claims

Cruz asserts, in conclusory fashion, state-law tort claims of medical malpractice and negligence. However, because all federal Section 1983 claims must be dismissed, the Court declines to exercise supplemental jurisdiction over Cruz's related state-law claims.[66]

---

65 Doc. 1 ¶ 23.

66 *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts should likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

### G. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[67] The Court will grant Cruz leave to amend his complaint.

If Cruz chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth his claim or claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Cruz must leave one-inch margins on all four sides of his pleading.[68] Any exhibits or documents he wishes to present should be attached to his amended complaint.

Cruz must name proper defendants and specify the offending actions taken by a particular defendant. He must also sign the amended complaint and indicate the nature of the relief sought. If Cruz does not timely file an amended complaint, dismissal of any Section 1983 claims without prejudice will automatically convert to dismissal with prejudice and the Court will close this case.

---

67 *Grayson*, 293 F.3d at 114.
68 *See* LOCAL RULE OF COURT 5.1.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss Cruz's Section 1983 claims pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. The Court declines to exercise supplemental jurisdiction over any related state-law claims. Leave to amend will be provided. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge